## SUPREME COURT.

Junius S. Lewis, respondent, agt. Daniel Dodge and Charles S. Barnes, appellants, impleaded with Walter R. Jones, Robert S. Lane, The Mayor, &c., of the city of New-York, Thomas Bell and Alfred G. Benson

Where a party, who claims a lien on a fund for salvage service, alleges that the fund is in danger of being lost, on account of the irresponsibility of the parties having possession of it, and also relief for an equitable distribution of it among parties, all performing, to a greater or less extent, salvage service, he is enti-

tled to an injunction to restrain any interference therewith by other parties claiming a lien thereon and possession thereof, and that the fund be brought into court to abide the final order thereof, on the settlement of the equities of the respective claimants.

Whether a municipal corporation have a right or not, under their charter, to contract for the raising of a sunken vessel in their harbor, they have an undoubted right to declare such vessel a *nuisance* and to order it to be *removed*. And the power to remove carries with it the right to retain the removed property, until compensation for the expense of such removal can be made. If so, the parties who bestow the principal labor in effecting this result may be protected, and are entitled to an equitable compensation, out of the proceeds of the sale, for their labor and expenditures, although dispossessed by the authority of the corporation before the completion of the work.

*New-York General Term, September,* 1858.

*Present,* DAVIES, SUTHERLAND *and* HOGEBOOM, *Justices.*

THIS was a suit in equity, to restrain the defendants from receiving the proceeds of the sale of the ship Joseph Walker and her cargo, and from interfering therewith further than to raise and place the same in a safe and proper situation, and to have the same duly sold, on due notice, at auction, on the customary terms of such sales, and to have said proceeds brought into court, and the rights of the plaintiff and the other parties to the suit thereto ascertained, and said proceeds paid out accordingly, and for general relief. The plaintiff demanded this relief upon allegations in his complaint, in substance, that he was part owner of the said ship and cargo, that she had been injured by fire and sunk at the foot of Roosevelt street in New-York, that the plaintiff, under the authority of the parties interested in said ship and cargo, had been engaged in raising and saving them, and was to be compensated by a portion of the proceeds; that the defendants, Jones, Dodge and Barnes, interfered with him while thus engaged, and compelled him to forbear the further prosecution of the said work, claiming to act under a contract made with the mayor, aldermen and commonalty of the city of New-York, authorized by the mayor or some of the officers of the corporation; that said Jones, Dodge and Barnes intended to sell said ship and cargo, and appropriate the proceeds to their own use, which they had

no right to. do ; that Jones was insolvent, and Dodge and Barnes sub-contractors under him, in whose hands the proceeds of said sale would not be safe ; that the other defendants, Bell, Benson and Lane, claimed to have some interest in said ship and cargo, or their proceeds, said ship, cargo and proceeds being of considerable value, and thereupon prayed the injunction and relief above stated. The suit was commenced on or about the 5th of September, 1855. An injunction order seems to have been issued according to the prayer of the complaint ; a motion to dissolve the same was denied on the 25th day of February, 1856, and the New-York Life Insurance and Trust Company appointed receiver, and the proceeds of the cargo ordered to be paid into said company, to the credit of the cause. The ship itself seems to have been subsequently libeled for wharfage, sold, and the proceeds paid into the registry of the district court of the United States.

It appears by the answer of Bell, that he claims under a contract alleged to have been made in January, 1854, with the persons representing said ship and cargo, whereby he agreed to raise the ship and cargo, for the compensation of seventy-five per cent. upon all he could raise, and he alleges that after commencing the work, and in June of the same year, he made an agreement with the plaintiff, disposing of one-fourth of his interest in said contract to him, and further agreeing that three-eighths of the proceeds of said ship and cargo should be divided between said plaintiff and said defendant, the plaintiff agreeing to raise, discharge and sell said ship and cargo, and to pay said defendant the further sum of $875, under which agreement, and in no other way, as this defendant insists, the plaintiff's claim arose and existed.

It appears by the answer of the mayor, aldermen and commonalty of New-York, that in April, 1855, said ship and cargo having previously sunk and being liable to become putrid or otherwise dangerous to the public health, the mayor and commissioners of health judged their removal necessary, and ordered such removal, and made a contract with the defendant Jones, for him to effect such removal at a compensation of

$13,000, which they claim as a lien upon said ship and cargo, and the right to recover the same against the owners thereof.

It appears by the answer of Jones and Lane, and in part also by that of Dodge and Barnes, that they claim under this latter contract with the corporation of New-York, and they allege, among other things, that said ship and cargo having by the owners thereof been abandoned to the underwriters, the defendant Bell made an agreement with said underwriters to raise and remove said wreck, that he engaged in the work, and subsequently employed the plaintiff to do it; that the latter prosecuted the work to some extent, fishing up a part of the cargo, and disposing thereof for $3000 to $4000, when he abandoned the work, and sold and disposed of the materials which he had used in attempting to raise the vessel; that the ship remained sunk in the slip, was a serious obstruction to navigation, and became a public nuisance, and dangerous to the public health by the decomposition of the vegetable substances which formed a part of its cargo. That thereupon, and with the assent of the public authorities of New-York, the defendant Jones made the contract for raising and removing said vessel, set forth in the answer of the city, giving security for its faithful performance by him, said underwriters releasing to the said Jones their rights and interests in said ship and cargo; that Jones entered upon the performance of the work under said contract, and to that end, as the answer of Jones and Lane alleges, made an agreement with the defendants Dodge and Barnes, as subcontractors, to perform the said work, and in pursuance thereof, the said parties entered upon the said work and continued in the same from said time to the time of the commencement of this action. The answer of Dodge and Barnes sets forth, on the other hand, that they having successfully prosecuted said work so far as to raise the ship to the surface, they were, on the 15th day of October, 1855, violently interfered with by the defendants, Jones and Lane, acting in concert with Fernando Wood, mayor of New-York, and prevented from the further prosecution of said work, and dispossessed of the structures and materials which they had prepared and used in the

Lewis agt. Dodge.

performance of their contract, and that said Jones, Lane and Wood still continue in the forcible and unlawful possession of said ship, cargo and works, having deprived said Dodge and Barnes thereof.

The answer of Jones and Lane further alleges, that shortly after the contract with Dodge and Barnes, Jones, for a valuable consideration, assigned and transferred to the defendant, Lane, all his right, title and interest in said contract, and in said wreck and cargo, to the defendant, Lane, who, it is alleged (although Jones is insolvent), is solvent and abundantly able to respond for the value of said ship and cargo, and for any possible claim of the plaintiff.

The defendant Benson does not seem to have put in any answer, but it appears from the contract between Bell and the plaintiff, bearing date on the 17th day of June, 1854, which was introduced in evidence, that it recites that Bell, having become the contractor to save the ship Joseph Walker and cargo, at a salvage compensation of seventy-five per cent., had disposed of one-half of his interest in said seventy-five per cent. to the defendant Benson. It further states the contract between Bell and Lewis, substantially as set forth in the answer of Bell. It further appeared in evidence, that the ship Joseph Walker was partially burned, and was sunk at the place before stated, on the 25th of December, 1853, and that on the 7th of January, 1854, the agents of the ship and of the underwriters made a contract with Bell to raise the ship and cargo, for seventy-five per cent. of the net proceeds of all he should raise. It further appeared that Lewis prosecuted the work of raising the vessel under his contract with Bell, to a considerable extent, in the autumn of 1854, and there is evidence tending to show that about the 1st of January, 1855, he discontinued the work and abandoned the enterprise. On the 27th day of April, 1855, however, he made a contract with one James Condon, by which the latter agreed with him to continue the work and raise the vessel, and Condon did some work under this contract. On the same day a proposition was made by the defendant Jones, to Fernando Wood, mayor

of New-York (there having been some previous correspond-ence between them), for the raising and removing of said vessel for the sum of $13,000, which was accepted on the 28th of April, by the mayor, who, by a resolution of the commis-sioners of health, passed on the 5th of May, 1855, was author-ized, in conjunction with the street commissioner and comp-troller, to cause the removal of said vessel and cargo. On the 4th day of May, 1855, the defendant Jones, with sureties (the defendant Lane being one of them), gave bond to the mayor, in the sum of $8,000, for the faithful performance of his con-tract to raise and remove the wreck of the ship Joseph Walker from the slip or wharf where she then lay. On the 9th of the same month (May, 1845), the defendant Jones contracted with the defendants Dodge and Barnes for the doing of this work, at a compensation of 50 per cent. upon the net proceeds of the sale of the vessel and her appurtenances, and 62½ per cent. of the net proceeds of the cargo, the work to be com-pleted within ninety days. In pursuance of this contract, Dodge and Barnes, soon after in the same month, proceeded in the performance of the work and continued for about six months, expending about $9,000 in raising the wreck, and succeeding in raising her and floating her to the Atlantic docks. The plaintiff gave them notice not to sell and threat-ened them with an injunction. There was evidence tending to show that the plaintiff was present during the performance of a part of the work done by Dodge and Barnes, and made no objections to their proceeding.

The defendants Dodge and Barnes moved, both at the close of the plaintiff's evidence and at the conclusion of the whole testimony, to dismiss the plaintiff's complaint, the motion being in each instance denied, and the defendants excepted. They also objected that the owners of the ship and cargo were necessary parties to the action. The court overruled the ob-jection, and the defendants excepted.

The cause having been heard before Mr. Justice DAVIES without a jury, he found the facts, in regard to the several contracts, substantially as above stated ; also, that the plaintiff

entered upon the work of raising the wreck under his contract with Bell, and was proceeding therewith until dispossessed by the defendant Jones, aided by Fernando Wood, mayor, and a police force acting under his orders, and was thus prevented from going on under his contract, and that the defendants Dodge and Barnes, prior to the commencement of the action, were also dispossessed by the defendants Jones and Lane, acting in concert with the mayor, said Jones and Lane coming into possession and proceeding to take out the cargo and being about to dispose thereof, and to appropriate the proceeds to their own use. And he held that the plaintiff was lawfully in possession when dispossessed, and together with the defendants Bell and Benson had a lien on the ship, cargo and proceeds, and had a right to retain possession and be paid out of the proceeds. That the defendants Jones, Lane, Dodge and Barnes had none of them a right to the possession of the ship or cargo, or the proceeds thereof, or to compensation out of said proceeds, for their labor and expenses; that Jones and Wood unlawfully took possession, and that the contract between them was illegal and void; that there was danger that the ship and cargo would be sold, and the proceeds paid over to Jones, or those claiming under him, and be lost; and that the plaintiff was entitled to an injunction restraining them from receiving said proceeds, and to have them paid over to him and said Bell.

On the 23d day of October, 1856, judgment was entered in accordance with this decision, which judgment further directed a perpetual injunction against all the defendants (except Bell and Benson), from receiving any of the proceeds. That Lewis, Bell and Benson were entitled to be paid seventy-five per cent. of the net proceeds of the sale of the ship and cargo, for their work and expenditures, and to recover the whole proceeds, subject to adjustment with the owners of the ship and cargo, or their assigns, and that plaintiff was entitled to the costs of the action against all the defendants, except Bell and Benson, the same being adjusted at the sum of $217.10. The defendants Dodge and Barnes duly and speci-

fically excepted to the finding of the judge on the facts, and to his conclusions of law, and to the judgment as entered, and appealed to this court therefrom. The other defendants seem to have acquiesced in the judgment.

F. B. CUTTING, *for the appellants.*

G. C. GODDARD, *for the respondent.*

By the court—HOGEBOOM, Justice. ·I think the learned judge who disposed of this case in the court below has inadvertently fallen into some errors in the disposition thereof, which require correction.

1. I have had some difficulty upon the question whether the action was sustainable at all, but, upon the whole, I think it was so, as to the injunction, upon the allegations of the complaint, of the danger of the fund on account of the alleged irresponsibility of the parties having possession of it, and also as to the relief, for an equitable distribution of the proceeds among parties, all performing, to a greater or less extent, a salvage service.

2. As to the objection that the owners of the ship and cargo should have been parties to the action, the appellants, not having taken the same by demurrer or answer, are not in a situation to avail themselves of it. (*Code*, § 148.) The proof also would seem to show, that the agreement with Bell, to pay seventy-five per cent. of the proceeds as his compensation for his services and expenditures, was made in behalf of the owners of the ship as well as the underwriters. The matter, therefore, seems open for adjudication, as to the disposition of the proceeds.

3. But, I think the appellants were entitled to compensation, and out of the proceeds of the property reclaimed. The service they performed was essentially a salvage service, and it contributed materially to the rescue of the property. It is true, that they proceeded under a contract with Jones, who derived his power to act from the city authorities, and that the agreement between the latter and Jones has been declared void

Lewis agt. Dodge.

in the court below. I do not think the want of power in the city authorities to act by any means apparent, although I have not consulted the provisions of the city charter which the contract referred to is said to violate. If the wreck was a *nuisance* (and such they declared it in effect to be), and dangerous to the health of the inhabitants, I do not see why they could not order it to be removed. (*Hart* agt. *Mayor of Albany*, 9 *Wend.* 571 ; *Renwick* agt. *Morris*, 3 *Hill*, 621 ; *S. C.* 7 *Hill*, 575.) I incline to think the power to remove carried with it the right to retain the removed property, until compensation for the expense of removal was made; and, if so, the parties who bestowed the principal labor in effecting this result ought to be protected. But, I think the appellants' claim may be supported upon another ground, to wit: that they acted in furtherance of the precise object sought to be accomplished by the plaintiff, and with his consent, express or implied. There is some reason for saying that the plaintiff had abandoned the enterprise; he left the work, he engaged in other business, he absented himself from the city, and he sold the materials and motive power which he had used in the abortive attempt to raise the vessel. Whether he designed to return to it or not, the public and the appellants might well conclude that he had given up the job as not remunerative, or as incapable of accomplishment. The appellants undertake it, the plaintiff looks on, makes no objection, rather encourages them than otherwise, and, at all events, suffers them to proceed, and I think *purposely* with the view of afterwards *availing himself of their labor*. He commences this action, not with the view of interrupting the work, but to prevent a sale and appropriation of the proceeds, except under the order of the court, and in a manner which shall protect the rights of all parties interested. He does not pray in his complaint for an absolute injunction, but on his own motion *qualifies* it, by allowing the defendants to raise the vessel and cargo, and place them in a safe and proper situation, and thus the defendants' work is allowed to proceed, with his own sanction and that of the court. Indeed, his complaint seems plainly to have been framed upon the

theory that others than himself were interested in the proceeds, and he, therefore, prays that the proceeds of the sale may be brought into court, the rights of the parties to the suit thereto judicially ascertained, and the proceeds paid out accordingly. I feel at liberty, therefore, to conclude, that the appellants are entitled to an equitable compensation out of the proceeds of the sale, for their labor and expenditures. These have been considerable, are sworn to exceed $9,000, and I think ought to be protected.

There is no sufficient evidence before the court to determine the precise value of this labor, nor the precise amount of these expenditures, either as made and incurred by the appellants, or by the plaintiff and Bell and Benson. I think they are all equitable liens upon the fund, and all deserving of remuneration. Nor is there, that I can discover, any evidence of the amount for which the vessel was sold under the libel for wharfage, or what are the net proceeds remaining in the district court of the United States. Nor does it appear whether the cargo has been sold, or in what condition it remains. Upon these points I think there should be a reference, to ascertain the facts, and the referee should be instructed to charge the parties, respectively, with any amounts they have realized from the ship and cargo, or their proceeds.

Nor, as at present advised, do I think it a proper case to charge the appellants with the plaintiff's costs of the litigation. I incline to think the costs both of the plaintiff and the appellants are a proper charge upon the fund, but my impression is, that that question had better be left until the coming in of the report of the referee.

So far, therefore, as the judgment appealed from fixes the amount to which the plaintiff and the defendants Bell and Benson are entitled, or have a lien, and allows the residue of the proceeds of sale to pass into their hands, and declares that the appellants are entitled to no part thereof, and awards a perpetual injunction against them, forbidding them to collect or receive any portion thereof, and charges them with the plaintiff's costs of the litigation, I think it should be reversed,

and a judgment entered to carry out the foregoing suggestions, and awarding a reference (the form whereof to be settled by one of the justices of this court), to inquire into and ascertain the particulars before mentioned, and reserving the question of costs, and all other questions, until the coming in of the referee's report.